United States v. Christopher Godfrey and 14-1-2-5-0 United States v. Dennis Fischer Good morning. Good morning, Your Honor. My name is William Lovett and I represent Mr. Godfrey. With the Court's permission, I'd like to reserve five minutes for rebuttal. Five minutes? Why don't we settle on three? Yes, Your Honor, that's fine. May it please the Court, Mr. Godfrey was convicted on a scheme to defraud based on statements made by 39 individuals accusing him, his employees, and his company of engaging in the fraud. Only one of those individuals testified at trial and was subject to cross-examination. The other individual's statements were contained in 32 emails and six letters from state agencies containing detailed allegations of the fraud, accusing Mr. Godfrey and his company of engaging in unlawful acts, and accusing them of engaging in fraud. None of these individuals appeared at trial or were subject to cross-examination. The government used the substance of the complaints contained in the emails and letters to prove the underlying fraud, the scope of the fraud, that it wasn't confined to a few telemarketers at his company, Hope. They used it to prove his fraudulent intent, that he knowingly and willingly engaged in the fraud, and they used the emails and letters to corroborate the testimony of Ronell Burris, who was the government's star witness and a cooperating co-defendant. The allegations in the emails and letters are only probative of the things that the government used them for to the extent the allegations are true, and therein lies the Confrontation Clause violation in this matter. Mr. Godfrey was denied the opportunity to cross-examine the individuals who made these complaints, and instead they were admitted unconfronted in violation of this Confrontation Clause rights. Admission... Your defense at trial was that the employees were essentially rogue employees, and the government put on these letters and notices in order to prove that your client had the criminal intent. I mean, that's what their argument is. So is it your position that there were simply too many of them, or that it would have been inadmissible to admit any of them? Our position is it's improper to admit any of the substance of the complaints when there's a Confrontation Clause violation. And so the court gave a cautionary instruction to the jury that they were only being admitted for a limited purpose and not for the truth of the content. And our position is a limiting instruction cannot cure a Confrontation Clause violation. The purpose that was discussed at trial was notice, and the purpose was notice of the fact that complaints were made, not substance of the allegations in the complaints. The government used the substance of the allegations in the complaints to prove its case. The fact that there was a limiting instruction, there was no legitimate non-hearsay purpose for offering the substance of the complaints for notice. So when you say the government used it for that purpose, are you saying the government used it for that purpose because of the contents of their closing argument? Contents of the closing argument. They were published to the jury. At one point, the government attempted to have an agent read the contents of the complaints of the jury. The government used... Well, if the information is admissible for a non-hearsay purpose, it's got to get to the jury somehow. And our position is there was no legitimate non-hearsay purpose for offering the substance of the complaints or the complaints themselves. There was other evidence offered in the case by the government that proved that Mr. Godfrey had no notice of the complaints. There was a state agent from Florida who testified that he discussed the fact that complaints were made with Mr. Godfrey, those complaints were resolved. So there was other evidence that was subject to confrontation that proved notice of the complaints. Why... That may be, but you don't control the government's case. And maybe they considered that one witness or two witnesses was less powerful on the issue of notice than putting in these communications. I'm not sure I'm following why this is important. Well, I would submit the government did not offer the letters and emails for notice. They offered it for knowledge. They stated it in their pleadings pre-trial, in their argument during trial, in their post-trial pleadings. More than one would strike me as going to their knowledge. Are you saying that knowledge that employees had committed offenses was an impermissible purpose? I'm having a hard time with this distinction you're drawing between notice and knowledge. It was an impermissible purpose from a confrontation clause point of view to the extent that knowledge can only be inferred if the allegations in the complaints are true. And if the jury is required to analyze... Well, that's not true. No, exactly. That's not true. The point is that if there are people who are making complaints, whether they're true or not, it gives your client notice that something is going on. There was other evidence that was subject to confrontation that showed that. Yes, weren't there... You opened by saying that there was only one witness presented at trial. I thought the government's position was they had half a dozen or so live witnesses on the facts of the fraud that was presented at trial. There were nine victims who did testify at trial that gave testimony about misrepresentations that were made to them by HOPE employees. The difference is none of those witnesses testified they had anything to do with Mr. Godfrey. They never communicated with them. He never communicated with them. The reason that the e-mails and the letters were important is it allowed the government to draw the link between the misrepresentations that were made and Mr. Godfrey's knowledge of those misrepresentations. They can only draw that link using the e-mails and misrepresentations if those misrepresentations in the e-mails and letters are true. So, for example... But they also had Burris. Yes, Mr. Burris was a government witness. He was a co-defendant that plead guilty. His credibility was hotly debated at trial. He was an admitted perjurer. He gave conflicting testimony as to Mr. Godfrey's role in the offense and the scope of the offense. The fact that the government admittedly used the e-mails and letters to corroborate his testimony is the equivalent of using out-of-court statements of other witnesses interviewed by the government to corroborate Burris, to prove that Burris is credible and is telling the truth on those points. It all turns on whether the allegations are true. There's no probative value if they're not true. We offered to, or we requested the district court, rather, redact the substance of the complaints, and the district court declined to do that, and the government objected. The only probative value this had was for the government to get the substance of those complaints in front of the jury, and it repeatedly argued to the jury. It argued in opening. You'll see the thousands of complaints from the Attorney General's office, the Better Business Bureau. They used it to prove the scope of the fraud, that it wasn't just a few bad telemarketers, that it was the whole company. In closing, they argued, start with the e-mails, and it corroborates Kelly and Burris' testimony with all the other evidence. The pieces fit. That's not using the e-mails and letters for notice. It's using those e-mails, the content of the e-mails, substantively to prove the fraud in an essential element of the government's case, which is Mr. Godfrey acted with knowing and willful and fraudulent intent to engage in the scheme. And for that reason, the Confrontation Clause was violated. I don't think there's any question that these statements in these e-mails and letters were testimonial. Some of them were complaints to the Better Business Bureau, and like the reports in Cameron, they were given to an organization who assists law enforcement with investigating and prosecuting fraud schemes. There were 10 of those complaints. Some of the statements specifically contemplated criminal prosecution. They stated that they had reported Mr. Godfrey and his company to law enforcement, or they intended to do so. So within the structure of Cameron and Williams, these statements are testimonial, and the government has offered no legitimate non-hearsay purpose for using the substance of the complaints to prove its case. A certain amount of substance would have to come in to show notice slash knowledge, because you can't just say the ray line of an e-mail comes in. It has to be notice of something. So when you offered your redactions to the district court, how did you draw that sort of line? We never got to that point. When we were arguing before the district court, we offered to redact them, and the district court rejected that offer. Because the government objected? Yes. And what was the basis of the government's objections? The government objected because they argued that the substance probably came in to prove knowledge, but knowledge of the fraud. The e-mails and letters are only evidence of Mr. Godfrey's knowledge of the fraud if they're evidence of the fraud. And they're only evidence of the fraud if the allegations are true. Yes. We've heard that theme before. And the government could have brought the notice. Thank you, Your Honor. We'll see if Judge Kayada has some questions for you now. Counsel, I'm not sure I understand why the substance of the complaint, whether it's true or not, would not be relevant to determining the likelihood that your client would have investigated the complaint to make himself familiar with what his employees are doing. Well, two responses. One, we did a trial attempt to introduce the responses to the complaint. The government objected. They specifically said we're not going to get into how Mr. Godfrey responded to the complaints. And the complaints are only probative. If we can't cross-examine a piece of paper on whether, for example, the person complaining was a customer of HOPE, or if the allegation is the person never received a refund and they did receive a refund, they're not probative as to whether Mr. Godfrey committed fraud. And the issue of notice is only probative if there's a legitimate non-hearsay purpose. The cases the government cites in its brief for this proposition are civil cases involving negligence. Certainly this wasn't a negligence case. And the fact that he was on notice there were complaints really shows nothing, especially when there was other evidence. The government could have put on their agent to describe. I hope you're not attempting to use all of your rebuttal time now. Thank you, Your Honor. May it please the Court. I'm Stephen A. Stryker on behalf of the United States. Just to start with what we think is the fundamental problem with Mr. Godfrey's argument in this case, it's that he's ignoring the role of other evidence. The other evidence showed that there was an underlying fraud. The challenged exhibits showed that the defendants had notice of something. Now, when you combine those two things, it means the defendants had notice of the fraud, but that's not what the jurors had to find. This evidence would have been probative irrespective of its truth. The defendants knew something. That also goes to Chief Judge Lynch's point about the redactions. As Chief Judge Lynch pointed out, the jurors needed to know what exactly it was the defendants knew, whether that was true or not. What did they have notice of? It wasn't that people were complaining that Koch telemarketers were using their parking lot. It was that they were complaining that there was this false pitch, that they were being pitched. So the jurors were entitled to know that, whether the exhibits were true or not. Now, also, just to talk about what the truth of the matter asserted was, it was that these out-of-court declarants were defrauded. It wasn't that the nine Massachusetts customers who testified at trial were defrauded. There was independent evidence of that. They were cross-examined. So that evidence was fully tested. But his argument is, save for one of those nine customers, none of them dealt personally with Mr. Godfrey. And is that correct? That is correct. And so none of them actually drew the connection between Godfrey and the fraud? Well, independent evidence, though, as Judge Thompson pointed out, independent evidence did connect Mr. Godfrey and Mr. Fisher to the fraud scheme. And so it doesn't necessarily go to whether that ‑‑ I think that goes more to the harmless error point than it goes to whether these were admissible under the Confrontation Clause. And actually, I can't believe I haven't mentioned it until this point in my argument, but the most important fact in this case is that the jury was specifically instructed by the district court three times not to take these for the truth of the matter asserted. The defendants have to get around in some way the Supreme Court's decision in Street and the decision in Richardson. Those cases say that jurors are presumed to follow their instructions, even in the Confrontation Clause context. There's no good reason to think that was violated here. Let me just say what concerns me about what the government actually said in closing. The government, in closing, urged the jury to look at the stack of e‑mails containing the complaints from customers that went to Godfrey and Fisher. And then the government said, and then you'll see that Burris's and Kelly's testimony, fit with all the other evidence, corroborates it, and fills it in some pieces. That's the part that's troubling to me, because it seems to me that in closing, that the government, even though the e‑mails were admitted for that limited purpose, seemed to, once they were actually in evidence, at least in their closing argument, seemed to urge the jury to consider them for more than notice. Well, I think what we were saying there, the point we were making there, was that when you combine notice with the other evidence in the case, it shows what the defendants actually knew. It is knowledge of the fraud. But when we talk about corroborating Mr. Burris's testimony, it only was corroborating his testimony about what the defendants knew. It doesn't corroborate whether the exhibits were true or false, i.e., whether there was a fraud. It's just the way the government expressed it in closing, it seems to be broader than just the knowledge component. I've been trying to figure out what to do with that. Did the government ever refer to the limiting instructions during the course of its closing? I'm not sure of the answer to that. I don't think it did. Sorry? I don't think it did. I think that's right. I don't think we did. But the instructions were read after the closing argument, I believe. So the jurors would well have understood that they could still only take these for a limited purpose. So, again, I think this distinction between notice and knowledge, it blurs, because, again, there was independent evidence. And I think McCormick on evidence, the defendants in the reply brief cite McCormick on evidence section 250, which deals with knowledge of the speaker. That's not the relevant section here. Actually, section 249 deals with knowledge of the listener and provides a really good example of this, of how sort of this metaphysical issue works, which is that McCormick gives this example of, in a civil case, a defendant hears from a tire inspector that the tire is defective. Now, McCormick says as long as there's independent evidence that the tire is defective and as long as the jury's told they can't take that out-of-court statement for its truth but only to show what the defendant would have known or would have gone to investigate, then that's fine. That's admissible. That creates no hearsay problem. Now, of course, that's a civil case. This is a criminal case involving the Confrontation Clause. But the 801C inquiry is still the same. Well, your opponent would say on that view of it, it's only Burr's testimony that establishes the connection with Godfrey and that he's not the ideal witness. He called him a perjurer, so on and so forth, and that the jury might not otherwise have had confidence in his testimony, which might have gotten the jury into the substantive content of all of the complaints as yet another example of the fraud as opposed to notice to management. Well, I think Mr. Burr's testimony was also reinforced by independent documentary evidence in this case that could not have been perjured. That is, there's an email, for example, from Mr. Godfrey to his Hope telemarketers, and this was in April of 2009, and you'll see it at supplemental appendix pages 12 and 13. In that email, Mr. Godfrey says to his telemarketers, you know, tell the customers congratulations, you've been approved for a mortgage modification. And make no mistake about it, that is a Hope document. That is not a D.C. financial document. There are scripts on Mr. Godfrey's computer that are D.C. financial documents. That's not one of them. But, of course, those scripts, too, show that he knew what the pitch was. And Mr. Impelazeri's testimony is key as well, because he's relaying complaints to the defendants personally. And in response to that, the defendants do what? They don't ensure that Mr. Kelly's giving a correct pitch or that Mr. Burr's is giving a correct pitch. I think also one thing that connected the Massachusetts customers to Mr. Godfrey and Mr. Fisher was the fact that even though there were multiple telemarketers that were pitching to these different customers, they actually were giving the same pitch. So as we point out in our brief, we think this suggests some top-down coordination within the confines of Hope's office. It can't be a coincidence that Mr. Godfrey has this pitch on his computer, that all of the Massachusetts customers are receiving the same pitch. It's just too much to be believed. We think that the Kelly case from this court, the Gutierrez case from this court, I think these tie in with Judge Kayada's question about the likelihood that the defendants would have investigated the complaints if they were acting in good faith. That's what those cases point out, that evidence, if it goes to what effect it would have had on the defendants, that's not for the truth of the matter asserted. It is admissible. I would turn finally to I think much of what I have just said goes to the harmless error point. But I do think there is strong, if the error was that the jury ignored its instruction, that would mean that they took these exhibits for their truth. What the exhibits went to, if they had been taken for their truth, would be whether there was any fraud. I don't think there was any dispute really about whether there was a fraud. You'll see in the defendant's opening statement at page 410 of the joint appendix, you'll see it in their closing argument as well, they say, well, there's no question that these Massachusetts customers were defrauded. The question is who defrauded them. So whether there was a fraud or not was really not the prime issue at trial. So the error, if any, was harmless beyond a reasonable doubt for that reason. Unless there are further questions. Judge Kayada. I have no question. Okay. Thank you. Thank you, Your Honors. Thank you, Your Honor. What the government has just argued is sufficiency of the evidence. We're not challenging the sufficiency of the evidence. No, I think he's just raised a very serious problem for you, which is that you conceded all along that there was fraud. In fact, it was pretty bad fraud. And the question that you raised was who was in charge, who was responsible as part of a defense that your client knew nothing about this. That being the case, why would the content of those e-mails and letters cause harm to your case? Well, the question of Mr. Godfrey's intent was a close one. There was evidence presented at trial that he refunded customers' money. There was evidence that he reported telemarketers that he suspected of fraud to the police. There was testimony that he fired telemarketers for making misrepresentations. The fact that he did all this, he cooperated with the State of Florida to refund customers' money. Mr. Imparizelli described him as professional, and he worked with the State of Florida to resolve the complaints. Those all mitigate against fraudulent intent. If somebody's intending on defrauding thousands of customers, they don't do those things. And the government, to overcome that, put in the substance of the complaints. There were other ways the government could have avoided a confrontation cause problem. They could have called as witnesses the people that made the complaints. They could have had the agent describe there were e-mails that contained customer complaints without getting into the substance. And the e-mails required the jury to evaluate the truthfulness to determine whether they were evidence of the fraud. And if they're not true, they're evidence of nothing. So for that reason, there was a confrontation clause violation. In terms of the harmless error standard, there were 32 e-mails and six letters from the State. The sheer number of the e-mails- Yes, but that's the question Judge Thompson asked you at the very beginning of this argument. And I thought you were going to make that argument then. You did not. You made the argument that any one of these e-mails would have caused a confrontation clause violation. And I thought you were staking your case on that. Well, in terms of harmless error, I am staking my case on that. Thank you, Your Honor. Thank you. Well, just a minute. Judge Chiata, do you have any further questions? No, I don't. Thank you. Thank you.